Filed 11/12/24  P. v. Vincent CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>CEDRIC VINCENT,<br><br>        Defendant and Appellant. | C099435<br><br>(Super. Ct. No. LODCRFE20230002795) |

Defendant Cedric Vincent drove through an intersection without stopping at a stop sign in Lodi late one night.  A police officer pulled defendant over and discovered his registration was long expired.  The officer decided to impound defendant's pickup truck.  Defendant got out of the truck and tried to flee.  He was apprehended and searched, resulting in the discovery of a partially loaded handgun.

Defendant moved to suppress the handgun and ammunition.  The motion was denied.  A jury later found him guilty of possession of a firearm with a prior felony

1

conviction and possession of ammunition by a prohibited person and found true allegations that he suffered two prior felony convictions within the meaning of the Three Strikes law. (Pen. Code, §§ 1170.12, subd. (b), 667, subd. (d), 29900, subd. (a)(1), 30305, subd. (a)(1).)[1] The trial court struck one of defendant's prior strikes and sentenced him to six years on the felon-in-possession of a firearm count.

Defendant appeals, arguing the magistrate erred in denying the motion to suppress. We agree and reverse.[2]

## I. BACKGROUND[3]

### A. Traffic Stop and Search

Lodi Police Officer Gerardo Ramirez was on duty in a marked patrol car on the night of March 4, 2023. Around 11:20 p.m., Ramirez saw a Dodge Ram pickup truck drive through an intersection without stopping at the stop sign. Ramirez activated his overhead lights and followed the pickup truck a short distance. As he drove, Ramirez radioed dispatch and learned the truck's registration had expired in August 2019.

Officer Ramirez followed the pickup truck to the parking lot of a small strip mall. The truck parked properly, and Ramirez approached the driver's side. As Ramirez drew near, he saw defendant's face in the driver's side mirror. Ramirez recognized defendant from a prior arrest for armed robbery.

Officer Ramirez requested defendant's license and registration. Defendant turned them over. Lodi Police Officer John DeLeon arrived shortly thereafter. Ramirez instructed DeLeon to stand near the driver's side door. Defendant remained in the truck,

---

[1] Undesignated statutory references are to the Penal Code.

[2] In light of our reversal, we need not address defendant's other contentions.

[3] We derive our summary of the facts from the evidence presented at the hearing on the motion to suppress.

with the engine on. Defendant wore a puffy jacket. He smoked a cigarette and spoke on the phone with his wife.

Officer Ramirez returned to his patrol car to prepare a traffic citation. He ran the truck's license plate number through Department of Motor Vehicle records and confirmed the registration had been expired since 2019. He also noted that defendant was associated with an address some 2.2 miles away.

Officer Ramirez then returned to the pickup truck and asked defendant to step outside. Defendant, who has mobility issues, gave Officer DeLeon permission to remove a walker from his backseat. DeLeon retrieved the walker, and defendant seated himself upon it.

Officer Ramirez said he wanted to pat search defendant. Defendant refused the pat search and started leaning forward on the walker, as though to prevent a search. A struggle ensued. Defendant stood and started to run.

Officers Ramirez and DeLeon tackled defendant around 15 feet away. Other officers arrived and helped subdue defendant. They eventually gained control over defendant and searched him. They found a Glock 26 nine-millimeter handgun with six rounds in defendant's jacket pocket. Defendant was arrested and taken into custody.

B.      *Charges and Motion to Suppress*

Defendant was charged by complaint with possession of a firearm with a prior felony conviction (§ 29900, subd. (a)(1)—count 1) and possession of ammunition by a person prohibited from possessing a firearm (§ 30305, subd. (a)(1)—count 2).[4] The

---

[4] Defendant was also charged with carrying a loaded firearm as a person with a prior felony conviction (§ 25850, subd. (c)(1)—count 3) and resisting a peace officer (§ 148, subd. (a)(1)—count 4). However, both counts were later dismissed at the prosecutor's request in the interest of justice.

complaint further alleged, as to both counts, that defendant had suffered two prior serious felony convictions. (§§ 1170.12, subd. (b), 667, subd. (d).)

Defendant filed a motion to suppress the gun and ammunition. The motion was heard concurrently with the preliminary hearing. We have already summarized much of the testimony offered at the hearing. We now direct our attention to the testimony at issue on appeal.

During the hearing on the motion to suppress, Officer Ramirez explained that he decided to tow defendant's truck upon returning to his patrol car and confirming that the truck's registration had expired. Ramirez elaborated on cross-examination that he relied on Vehicle Code section 22651, subdivision (o), which gave him authority to tow, and discretion whether to exercise that authority.

Defense counsel then asked: "So why did you decide to not let him drive his car 2.2 miles home with instructions not to drive it again until it was registered?" The prosecutor objected on relevance grounds and the magistrate sustained the objection.

Defense counsel then asked whether Officer Ramirez was familiar with those sections of the Lodi Police Department Manual (the Manual) dealing with the storage of vehicles at arrest scenes.[5] Ramirez responded he was. Defense counsel then asked

---

[5] Neither defendant nor the prosecution provided the Manual to the magistrate. Accordingly, we deny defendant's request on appeal for judicial notice of those portions of the Manual dealing with the storage of vehicle at arrest scenes. (See, e.g., *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [absent exceptional circumstances, "[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court"]; *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 332, fn. 9 [declining to take judicial notice of materials not before the trial court].) Nevertheless, as indicated in the text, Officer Ramirez testified he was familiar with the relevant portions of the Manual, which gave him discretion whether to impound the truck. Given that testimony, we consider whether the exercise of discretion complied with the Fourth Amendment, without reference to the Manual.

whether the Manual authorized him to leave a vehicle at the scene, so long as it was lawfully parked. Ramirez responded in the affirmative. Turning to the decision to impound defendant's truck, defense counsel asked, "Okay. So why did you feel the need to tow the vehicle?" The prosecutor objected, again on relevance grounds. The magistrate asked defense counsel why Ramirez's thought process was relevant, given that he had discretion to impound the truck. Defense counsel responded, "They're creating an unnecessary situation where they're trying to bootstrap a pat search onto something that they don't even need to do." The magistrate responded, "But, again, they have discretion to do it." The magistrate then sustained the objection.

Following further witness testimony and argument, the magistrate denied the motion to suppress and held defendant to answer. Shortly thereafter, the prosecution filed an information charging defendant with the same counts and prior strikes, and further alleging, as to count 1, that defendant was armed with a firearm during the commission of the crime. (§ 1170.12, subd. (c)(2)(C)(iii).) The information also alleged various aggravating factors, including that defendant's prior convictions were numerous (Cal. Rules of Court, rule 4.421(b)(2)) and he had served a prior prison term (Cal. Rules of Court, rule 4.421(b)(3)).[6] Defendant pled not guilty and denied the allegations. He later filed a combined motion to set aside the information and renewed motion to suppress pursuant to sections 995 and 1538.5, subdivision (i). That motion, too, was denied.

The matter was tried to a jury in August 2023. The jury found defendant guilty on all remaining counts (counts 1 and 2) and found true the allegation that defendant was personally armed with a firearm during the commission of count 1. In a bifurcated proceeding, the jury found true the two prior serious felony allegations and aggravating

---

[6] The information also alleged that defendant was on probation or parole when the crimes were committed (Cal. Rules of Court, rule 4.421(b)(4)), but the prosecution later struck that allegation.

5

prior prison terms.  The trial court struck one of defendant's two prior strikes and sentenced him on count 1 to the upper term of three years, doubled, for a total term of six years in prison.  The trial court imposed and stayed defendant's sentence on count 2.

This appeal timely followed.

## II.  DISCUSSION

Defendant advances two interrelated arguments.  First, he argues the magistrate erred in limiting defense counsel's cross-examination of Officer Ramirez regarding his reasons for impounding the truck.  Second, he argues the evidence was not sufficient to allow the magistrate to determine the reasonableness of the decision to impound the truck.  Both arguments are well taken.  We will explain why in a moment, after we set forth our standard of review and the governing law.

### A.     Standard of Review

The Fourth Amendment to the United States Constitution protects against warrantless searches and seizures.  (*People v. Camacho* (2000) 23 Cal.4th 824, 829.)  Warrantless searches and seizures are presumptively unreasonable, and the prosecution bears the burden of showing by a preponderance of the evidence that the search or seizure was constitutionally permissible.  (*United States v. Matlock* (1974) 415 U.S. 164, 177, fn. 14; *People v. Simon* (2016) 1 Cal.5th 98, 120.)

Section 1538.5 establishes procedures by which criminal defendants may seek to suppress illegally seized evidence.  (*People v. Romeo* (2015) 240 Cal.App.4th 931, 940 (*Romeo*).)  Ordinary rules of evidence generally apply to suppression hearings, with exceptions not relevant here.  (See *Hewitt v. Superior Court* (1970) 5 Cal.App.3d 923, 927 ["Evidence Code section 300 makes it clear that, except as provided by statute, the Evidence Code applies to every evidentiary hearing in the state courts"]; and see Levenson, Cal. Criminal Procedure (The Rutter Group 2023) § 6:19 [discussing hearsay exceptions to the Evidence Code applicable to suppression hearings].)

6

"When a suppression motion is made before a magistrate in conjunction with a preliminary hearing, as in this case, the magistrate tries the facts, resolving credibility issues and conflicts in the evidence, weighing the evidence, and drawing appropriate inferences. [Citations.] If the magistrate denies the motion and holds the defendant to answer, the defendant must, as a prerequisite to appellate review, renew his challenge before the trial court by motion to dismiss under section 995 or in a special hearing. [Citations.] At that stage, the evidence is generally limited to the transcript of the preliminary hearing, testimony by witnesses who testified at the preliminary hearing (who may be recalled by the prosecution), and evidence that could not reasonably have been presented at the preliminary hearing." (*Romeo, supra,* 240 Cal.App.4th at p. 941.)

On appeal, we too "are 'concerned solely with the findings of the [magistrate].' [Citation.] After submission on the transcript at the special hearing, the appellate court, like the superior court, is bound by the magistrate's factual findings so long as they are supported by substantial evidence. [Citations.] On review of the superior court ruling by appeal or writ, a two-step standard of review applies. In the first step of our review, 'we in effect disregard the ruling of the superior court and directly review the determination of the magistrate.' [Citation.] At this stage, we consider the record in the light most favorable to the People since 'all factual conflicts must be resolved in the manner most favorable to the [superior] court's disposition on the [suppression] motion.' " (*Romeo, supra,* 240 Cal.App.4th at p. 941.) In the second stage, "we independently apply the law to the factual findings [citations], determining de novo whether the factual record supports the magistrate's conclusion that the challenged search met the constitutional standard of reasonableness." (*Id.* at p. 942.)

B.      *The Community Caretaking Exception*

"The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." (*Miranda v. City of Cornelius* (9th Cir. 2005) 429 F.3d 858, 862.) A seizure conducted without a warrant is per se unreasonable under the Fourth

Amendment—subject only to a few specifically established and well delineated exceptions. (*Katz v. United States* (1967) 389 U.S. 347, 357.) One such exception is the "community caretaking" function, which allows police officers to impound vehicles that " 'jeopardize public safety and the efficient movement of vehicular traffic.' " (*Miranda v. City of Cornelius, supra,* at p. 864.)[7]

Whether an impoundment is warranted by the community caretaking doctrine "depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." (*People v. Williams* (2006) 145 Cal.App.4th 756, 761.) "Police officers may exercise discretion in determining whether impounding a vehicle serves their community caretaking function, 'so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.' " (*People v. Torres* (2010) 188 Cal.App.4th 775, 787 (*Torres*).) The community caretaking function does not create "a generalized exception to the warrant requirement." (*People v. Ovieda* (2019) 7 Cal.5th 1034, 1050.) Thus, impoundment cannot be used as an excuse for a warrantless search. (*Torres, supra*, at pp. 787-788; cf. *People v. Lee* (2019) 40 Cal.App.5th 853, 867 ["Officers may not use an inventory search as 'a ruse for a general rummaging in order to discover incriminating evidence' "].)

---

[7] Inventory searches are another "well-defined exception to the warrant requirement." (*Colorado v. Bertine* (1987) 479 U.S. 367, 371.) "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items . . . and to protect against false claims of loss or damage." (*Whren v. United States* (1996) 517 U.S. 806, 811, fn. 1.) Inventory searches are also intended to serve a community caretaking purpose. (*South Dakota v. Opperman* (1976) 428 U.S. 364, 370.) Although the gun and ammunition here were not products of an inventory search, impoundments and inventory searches often occur together, and the parties seem to agree that many of the same authorities and legal principles apply.

In considering the validity of an impoundment, we ask whether the decision to impound the vehicle was reasonable under the totality of the circumstances. (*People v. Duong* (2020) 10 Cal.5th 36, 52.) "Factors relevant to whether a particular impoundment is justified include the location of the vehicle and the likelihood it will create a hazard to other drivers or be a target of vandalism or theft." (*Halajian v. D&B Towing* (2012) 209 Cal.App.4th 1, 15; see also *People v. Williams, supra,* 145 Cal.App.4th at pp. 762, 763 [impoundment served no community caretaking function where "[t]he car was legally parked," there was no particular "possibility that the vehicle would be stolen, broken into, or vandalized," and the car did not pose "a hazard or impediment to other traffic"].) The prosecutor carries the burden of establishing the reasonableness of the impound decision. (*People v. Williams, supra,* at p. 762.)

C.      *Limitation of Defense Counsel's Cross-Examination*

Defendant argues the magistrate abused his discretion by restricting defense counsel's cross-examination of Officer Ramirez. He maintains the cross-examination was aimed at eliciting information concerning Ramirez's reasons for impounding the truck, and that information was relevant to determining whether the impound decision was motivated by an improper investigatory purpose. The People respond that Ramirez's reasoning was irrelevant. The People are wrong.

We ordinarily do not inquire into an officer's subjective motivations in Fourth Amendment analysis. (See, e.g., *Blakes v. Superior Court* (2021) 72 Cal.App.5th 904, 915 ["an officer's motivations or intent are irrelevant to whether probable cause for a search or seizure exists, as probable cause is determined objectively"]; see also *Bond v. United States* (2000) 529 U.S. 334, 338, fn. 2 ["the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment"]; *Whren v. United States, supra,* 517 U.S. at p. 813 ["we have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers"]; *Ashcroft v. al-Kidd* (2011) 563 U.S. 731, 737, 736 [with limited

9

exceptions, the high court has "almost uniformly rejected invitations to probe subjective intent" because the Fourth Amendment "regulates conduct rather than thoughts"].)

But impoundments and inventory searches are exceptions to the general rule. (*People v. Lee, supra,* 40 Cal.App.5th at p. 867; *Blakes v. Superior Court, supra,* 72 Cal.App.5th at pp. 914-915.) "Unlike the probable cause determination, which rests solely on an objective standard, the inventory search exception evaluates both the objective reasonableness of the impound decision and the subjective intent of the impounding officer to determine whether the decision to impound was 'motivated by an improper investigatory purpose.' [Citation.] Such purpose renders a decision to impound and the subsequent inventory search unlawful under the Fourth Amendment." (*People v. Lee, supra,* at p. 867; see also *Torres, supra,* 188 Cal.App.4th at p. 791 ["Inventory search jurisprudence *presumes* some objectively reasonable basis supports the impounding. The relevant question is whether the impounding was subjectively motivated by an improper investigatory purpose"]; and see *United States v. Anderson* (2024) 101 F.4th 586, 593 [impoundments and inventory searches are "the rare context where the Fourth Amendment analysis is not purely objective—subjective motivations are material"]; and *United States v. Johnson* (2018) 889 F.3d 1120, 1125 [" 'actual motivations *do* matter' " in "administrative searches conducted without individualized suspicion—such as drunk-driving checkpoints or vehicular inventory searches"].) Thus, "courts will explore police officers' subjective motivations for impounding vehicles in inventory search cases, even when some objectively reasonable basis exists for the impounding." (*Torres, supra,* at pp. 787-788.)

Here, Officer Ramirez understood he had discretion whether to impound the truck pursuant to Vehicle Code section 22651, subdivision (o). Defense counsel's questions would have revealed Ramirez's reasons for choosing impoundment, rather than some other outcome, such as allowing defendant to drive home (some 2.2 miles away), with instructions not to drive the truck again until properly registered. That Ramirez was not

required to exercise his discretion one way or another does not make that testimony irrelevant. Ramirez could have testified he decided to impound the truck because he knew defendant to be a felon and believed he might find evidence of crime in the truck. Such testimony would have established an improper investigatory pretext, which could have invalidated the impound and search. (*Blakes v. Superior Court, supra,* 72 Cal.App.5th at pp. 914-915.) The magistrate erred in limiting the scope of defense counsel's cross-examination.

D.      *Reasonableness of the Impound Decision*

Having found error, we must determine whether the impound could be considered constitutionally reasonable even assuming the presence of an improper investigatory motive. Assuming Officer Ramirez had an objectively reasonable community caretaking rationale for impounding defendant's truck, we still cannot exclude the possibility, that he also had an impermissible motive, unrelated to community caretaking. "Importantly, 'the mere presence of a criminal investigatory motive or a dual motive— one valid, and one impermissible—does not render an administrative stop or search invalid; instead, . . . [the Court] ask[s] whether the challenged search or seizure would . . . have occurred in the absence of an impermissible reason.' " (*United States v. Magdirila* (9th Cir. 2020) 962 F.3d 1152, 1157.) Thus, the question presented is whether the impound would have occurred regardless of Ramirez's subjective intent. (*Ibid.*) That question cannot be answered on the record before us.

As previously discussed, Officer Ramirez testified Vehicle Code section 22651, subdivision (o) gave him authority to impound the truck, and discretion whether to exercise that authority. He similarly testified the Manual authorized him to leave a legally parked vehicle at the scene of arrest. The evidence thus established that Ramirez had discretion to impound the truck and recognized as much. There was no evidence Ramirez's discretion was guided by any standardized policy that would ensure impoundment was not " 'a ruse for a general rummaging in order to discover

11

incriminating evidence.' " (*Torres, supra,* 188 Cal.App.4th at p. 788; and see *id*. at p. 789 ["The relevant issue is the deputy's motive for impounding the truck—did he impound the truck to serve a community caretaking function or as a pretext for conducting an investigatory search?"].)

With no explanation for why Ramirez decided to impound the truck, and evidence he recognized defendant as a felon, there was at least some possibility the impound decision was motivated by an improper investigatory purpose. Such a purpose would not necessarily invalidate the impound. (*United States v. Magdirila, supra,* 962 F.3d at p. 1157.) But the magistrate could not meaningfully consider whether the impound would have occurred absent any such improper purpose without hearing Ramirez's subjective reasoning process and assessing his credibility. And the magistrate's incomplete analysis hampers our own review.

Although we independently determine whether the impound decision was reasonable under the totality of the circumstances, we rely on the magistrate's factual findings. (*People v. Tacardon* (2022) 14 Cal.5th 235, 255.) "We normally imply in favor of the magistrate's order every finding that is supported by the evidence, but this rule 'operates only where it can be presumed that the court has performed its function of weighing the evidence. If analysis of the record suggests the contrary, the rule should not be invoked.' " (*Ibid.*) Here, of course, the record shows the magistrate did not consider Officer Ramirez's subjective intent and made no findings on that issue. Consequently, we cannot presume the magistrate considered the issue and resolved it against defendant.

As we have explained, the magistrate erroneously excluded relevant evidence. We do not know what Officer Ramirez would have said about his subjective motivation for impounding the truck and are therefore unable to say the evidence is susceptible to only one reasonable interpretation. We therefore conclude the matter must be remanded for a new hearing on the motion to suppress. (*People v. Tacardon, supra,* 14 Cal.5th at p. 391.) Given this conclusion, we need not address defendant's other arguments.

## III.  DISPOSITION

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

MESIWALA, J.